STUDWELL v. The E. H. COFFIN. See Cases Nos. 4,309 and 4,310.

STUMP (BURKHOLDER v.). See Case No. 2,165.

## Case No. 13,560.

### STUMP v. DENEALE.

[2 Cranch, C. C. 640.] [1]

Circuit Court, District of Columbia. April Term, 1826.[2]

WILLS—CHARGING REAL ESTATE WITH DEBTS—"ESTATE"—CONSTRUCTION.

1. The question whether the testator intended to charge his real estate with his debts, is to be decided by a careful consideration of the whole will.

2. The word "estate" will apply to real or personal estate, or to both, according to the manner in which it is used in reference to the respective clauses of the will.

3. The following clause of the will did not charge the real estate: "I am security for my brother James for two sums of money, for which I hold a deed of trust on his property, sufficient, I hope, to pay the same; and I do direct that my estate shall not be sold to pay those debts until the property so deeded, shall be sold, when my estate must be charged for any deficiency."

This was a bill in equity, by the executors of John Stump, against the heirs at law and executrix of George Deneale, to charge his real estate with the balance of a judgment at law, recovered by the plaintiffs against

---

[1] [Reported by Hon. William Cranch, Chief Judge.]

[2] [Affirmed in 1 Pet. (26 U. S.) 585.]

the testatrix, amounting to $5,000, and interest and costs upon a contract in which the testator, George Deneale, was surety for his brother, James Deneale; the said sum being the balance due after deducting from the amount of the judgment the net proceeds of the sales of James Deneale's property, in Virginia, under a decree of a court of chancery, in that state, upon the deed of trust mentioned in the will of George Deneale. All the material facts stated in the bill were admitted in the answer, and the principal question was, whether the real estate was, by the will, bound for this debt.

Hewitt & Swann, for plaintiffs, relied upon the words of the will, "when my estate must be charged with the deficiency," and cited Roberts, Wills, 405.

Mr. Mason, for defendants, contended, that, from the context and the whole tenor of the will, the word "estate," in that clause, must be confined to his personal estate, and cited Lambert's Lessee v. Paine, 3 Cranch [7 U. S.] 133: "That this word, when coupled with things that are personal only, shall be restrained to the personalty. Noscitur a sociis."

CRANCH, Chief Judge (THRUSTON, Circuit Judge, absent). The bill seems to be imperfect, neither charging that there was any real estate, nor praying an account or discovery of real estate; and perhaps there is some irregularity in the proceedings. However, supposing the proceedings to be regular, and the bill amended, &c., the principal question is, whether the real estate is, by the will, bound for this debt?

The testator, in his will, says: "I will and bequeathe to my beloved wife, Mary Deneale, all and singular my estate, both real and personal, during her natural life, for the uses and purposes following, that is to say, for the purpose of raising and educating my children until they respectively arrive at the age of twenty-one years; and it is my will and desire that each of my children, as they respectively attain the age of twenty —— years, shall become entitled to an equal proportion of my estate, both real and personal, subject to their proportion or charge of one third of the same, to be retained by my wife, for her support and maintenance, during her life; but I do hereby authorize and empower my said wife to make any of them advances of their proportion, if their merits and good conduct shall warrant the same. And I further recommend to my wife to sell all the negroes that I shall die possessed of, for such term of years as their respective ages shall warrant to them a support when free. Item, I do hereby direct that an appraisement only of my estate be made, and that no sale of furniture shall take place. I, at this time," (February 13th, 1815,) "am not indebted to any person, and propose to continue so. I

am security for my brother James, for two sums of money, for which I hold a deed of trust on his property, sufficient, I hope, to pay the same, and I do direct that my estate shall not be sold to pay those debts until the property so deeded shall be sold, when my estate must be charged with such deficiency." These are the only clauses in the will in which the word "estate" is used. He then makes his wife and son his executors, and says, "I do hereby direct that they shall not give security, as my own debts do not demand it."

It seems evident, that when he meant to include the idea of the realty, in the word estate, he added the word "real." Thus, he twice used the expression, "my estate, both real and personal," when it is evident he was contemplating a disposition of his whole estate; and three times he used the word "estate" when it is equally evident that he was contemplating only the ordinary fund out of which the debts of a deceased person are to be paid. That fund is the personal estate. It is evident, also, from his will, that he thought his personal estate would be more than sufficient to pay his debts, including his responsibility for his brother. He directs that an appraisement, only, of his estate should be made. The appraisement alluded to must have been that appraisement of the effects of a deceased person, which is required by law. But the law requires an appraisement of the personal estate only. Having thus used the word estate in reference to the personal estate only, he immediately proceeds to state that he is not indebted, and intended to continue free from debt; that he was bound for a debt of his brother whose property he held in trust, and hoped it would be sufficient to pay the debt; and directs that his own estate should not be sold to pay it until the deficiency of his brother's property should be ascertained. What kind of estate of his own was it that he then had in contemplation, and which he directed not to be sold? Unquestionably, that estate which is the natural and ordinary fund out of which the debts of deceased persons are to be paid, and which could be sold by his executors, namely, the personal estate. This inference is strengthened by the circumstance that he had just used the word "estate" in reference to the personal estate only, as is evident from his connecting it with the word "appraisement." The estate, then, which he directed should not be sold, was the personal estate. But, in the same sentence, after saying that his estate should not be sold until a certain event should happen, he goes on to say that when that event shall have happened, then his estate must be charged. What estate? Certainly the same estate which he had forbidden to be sold until the event should happen, namely, the personal estate. But it is uncertain whether he meant to charge any part of his estate. If the will creates a

charge upon any part of the estate, it must be by the words, "when my estate must be charged with any deficiency." These words may be merely declaratory of a fact; and as they evidently have reference to the personal estate, it is a fair inference that he did not mean, thereby, to create any charge upon his estate. His object seems to have been rather to restrain his executors from volunteering the payment of his brother's debt before it should be ascertained whether it would not be paid out of the funds which his brother had provided for its payment, than to create any new charge upon his own estate. Men do not act without a motive; and we do not see any for the testator's charging his real estate for the debt of his brother, who had already provided a fund for its discharge, which the testator hoped would be sufficient, and when the testator's personal estate was, by him, deemed sufficient to make good the deficiency, if there should be any. This construction of the will is strengthened by the consideration, that, in the former part of the will, he had made a disposition of his real estate entirely inconsistent with the idea of charging it with his brother's debt. He devised it to his wife, for her life, for the support of his children; and it is one of the soundest rules of construction that a will should be so construed, if possible, as to give effect to every part.

Again, by directing that his executors should not give security for their administration, he seems to show a disposition not to give any additional security for the debt of his brother. The word "estate" is, often, after the death of a person, used, by metonymy, for the executors or administrators. Thus, we say that "the estate of such a person is indebted to us," or "we are indebted to the estate," or, "we will charge the estate with such a sum," &c. Here it is evident that we use the word "estate" as if it stood in the place of the deceased person. But the correct and simple mode of expressing the idea would be to say that the executor is indebted to us, or the executor must be charged with such a sum, &c. In this sense we think the testator used the word estate in that clause of his will in which he says, "when my estate must be charged with any deficiency." He is contemplating an event which might take place after his death, and uses the word estate as a substitute for himself, or for his executors. If he had been speaking of the same event as happening in his lifetime, he would probably have said, "when I must be charged with any deficiency." He considers the debt as solely the debt of his brother until the deficiency should be ascertained, when he himself would be the debtor for such deficiency. This seems to be the only idea he meant to convey. He directs that his own estate shall not be applied to the payment of his brother's debt until the deficiency of his brother's estate should be ascertained, when he admits

that his own estate will be debtor for such deficiency.

It is true that there are many cases in which the word "estate" in a will, has been holden to convey real estate, even in fee-simple. But the clear doctrine resulting from all the cases upon the subject, is, "That although the word 'estate,' taken independently of the context, by its own force denotes, not only real as well as personal estate, but the highest degree of real estate, and the word 'property,' carries, of itself, both real and personal property; while the word 'effects' is generally and properly applicable to personal estate only; yet that all these words, (and indeed every other form of expression whereby a testator declares his will in respect to the disposition of his property,) submit to the rule which requires a will to be construed agreeably to the intention of the testator, where it can be collected from the whole will." 1 Roberts, Wills, 413.

This rule is exemplified in the case of Woollam v. Kenworthy, 9 Ves. 137. There the testator, after directing that his debts should be paid out of his personal estate, gave certain legacies; and having a real estate in land, and a real estate in a rent-charge, devised the latter to his wife for life, and, after her death, to trustees to sell, and after giving some more legacies, directed that as and for the moneys to be received from the sale of the rent-charge, and also the moneys to arise from a sale of his household goods and furniture, plate, linen, china, beds, and bedding, and from all other his estate and effects of what nature or kind whatsoever or wheresoever; the same should, in the first place, be liable and subject to, and charged with the payment of the before-mentioned legacies; and the residue of such moneys to arise as aforesaid, he directed to be divided and applied as therein mentioned. In that case (which is more analogous to the present than any other we have seen) Lord Eldon held, that by the words "from all other his estate and effects of what nature or kind soever, or wheresoever," no real estate, other than the rent-charge, was liable to be sold for the purposes of the trust, or for the payment of the legacies. This construction resulted from the intention of the testator gathered from the consideration of the whole will. This is the only general rule upon the subject, and is applicable to all cases of construction of wills.

By this rule, for the reasons before given, we are of opinion that the lands of the testator are not charged, by the will, for the debt due to the plaintiffs, and that the bill must be dismissed.

Bill dismissed.

Affirmed in supreme court of the United States, January term, 1828. 1 Pet. [26 U. S.] 585. Bank of U. S. v. Smith, 11 Wheat. [24 U. S.] 171.
[See Cases Nos. 3,785 and 3,786, and 8 Pet. (33 U. S.) 526, 529.]